**CLIPSON, Appellant,**

v.

**SCHLESSMAN et al., Appellees.**

[Cite as *Clipson v. Schlessman* (1993), 89 Ohio App.3d 230.]

Court of Appeals of Ohio,
Erie County.

No. E–92–27.

Decided June 18, 1993.

*Robert Troll Lynch,* for appellant.

*John D. Latchney,* for appellees.

SHERCK, Judge.

This is an appeal from an order of the Erie County Court of Common Pleas which granted a summary judgment to an employer in a wrongful discharge case. Because we find that the trial court erred in determining that Ohio's employment-at-will doctrine precluded the action, which was based on a disability-discrimination claim, we reverse.

Appellant is Michael J. Clipson. In 1970, appellant was employed by appellee, Schlessman Seed Company,[1] as a general laborer. Appellant was later promoted to a position involving sales and administration.

At some point in 1985, appellant began to experience the symptoms of what later was diagnosed as a neurologic disorder. There is a dispute between the parties as to whether this medical condition affected appellant's work performance. On January 24, 1986, appellee terminated appellant's employment.[2]

Appellant initially brought suit in August 1987. The suit was dismissed without prejudice in 1990. In 1991, appellant again brought suit. It is the dismissal of this latter action that underlies this appeal.

In Count 1 of his complaint, appellant asserts that he was wrongfully discharged and quotes a letter, dated February 11, 1986, from appellee to the Ohio Bureau of Employment Services, which states that "there was no evidence of either misconduct and/or willful neglect on the part of the [appellant]. He was laid off strictly because of his documented physical incapacities." Appellant alleges that he is "handicapped" and that his employment was terminated as a

---

1. Also named defendants and appellees are Daryl Deering, president of Schlessman Seed Company, and two family members, Lawrence and Arthur J. Schlessman, whom appellant collectively describes as his employers in his complaint in the trial court. We shall refer to these individuals as a singular appellee.

2. There is a semantic dispute between the parties as to whether appellant was laid off or fired. A resolution of this is unnecessary for our purpose.

result of that "handicap" in contravention of the public policy set forth in R.C. Chapter 4112.

In Count 2 of his complaint, appellant asserts that his wrongful termination constituted a reckless infliction of emotional distress. In Count 3, appellant alleges the breach of an express or implied contract of employment.

Appellee responded to appellant's complaint with a general denial. Additionally, appellee asserted several affirmative defenses.

All claims were ultimately disposed of, without comment, by the trial court's granting of summary judgment.

Appellant appeals the granting of summary judgment, setting forth the following four assignments of error:

"I. The trial court erred in dismissing complaint below, for the reason that the appellee-company's employee policy statement constitutes clear evidence of a binding contract with plaintiff.

"II. The trial court erred in dismissing the complaint below, for the reason that promissory estoppel abrogates the doctrine of employment at will, which was erroneously recognized by the trial court.

"III. The trial court erred in dismissing complaint due to the fact that the rule of *Greeley* is neither new nor is in violation of the Ohio Constitution when applied retroactively, as the trial court failed to do.

"IV. The trial court erred in dismissing complaint below, due to the fact that appellee-company's employee manual is both a memorandum of a contract; and also serves as an indication of a promise supporting promissory estoppel concepts."

Procedures governing motions for summary judgment made pursuant to Civ.R. 56 are well established. Three factors must be demonstrated:

"(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

"The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. See, also, *Johnson v. New London* (1988), 36 Ohio St.3d 60, 61, 521 N.E.2d 793, 794–795.

I

Appellant's first, second and fourth assignments of error are related, as they all deal with counts in the complaint which sound in contract. Therefore, they will be discussed together.

■ In support of its motion for summary judgment, appellee, citing *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 103, 19 OBR 261, 263, 483 N.E.2d 150, 153–154, points out that Ohio is an employment-at-will state. Appellee argues that, absent an agreement for continued employment, appellant's contractual claims must fail as a matter of law.

A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media Ltd., of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099.

Appellant, in response to appellee's motion, submitted his own affidavit averring that (1) shortly after a promotion in 1983 the president of the company told him, "It is nice to have you here in the office, you are in a good position with the company," (2) in 1985 another supervisor told him that the "company highly appreciated a job well done," (3) a member of the Schlessman family, who was not a supervisor, at some point stated that the appellant "would never have to worry about [his] job," and (4) that several times during his employment his superiors complimented him for his work. Additionally, appellant submitted a copy of a 1983 employee manual. Appellant argues that these statements and the manual constitute evidence of an express contract whereby appellant's employment could be terminated only for just cause. Alternatively, appellant argues that the evidence constitutes a promise upon which appellant reasonably relied to his detriment. Therefore, appellant maintains that the doctrine of promissory estoppel supplies the necessary consideration for the alleged contract.

■ We note, however, that both of appellant's contractual arguments face the same problem. There can be no contract available to exempt appellant from the employment-at-will doctrine unless there is a promise. Restatement of the Law 2d, Contracts (1973), Sections 17 and 90; *Wing v. Anchor Media Ltd., supra,* 59 Ohio St.3d at 110, 570 N.E.2d at 1098; *Mers v. Dispatch Printing Co., supra,* 19 Ohio St.3d at 104, 19 OBR at 264–265, 483 N.E.2d at 154.

■ Our review of the statements upon which appellant relies in his affidavit indicates, at best, praise of appellant's job performance and discussions of his future. Standing alone, praise with respect to job performance and discussion of an individual's future career will not evidence an employment promise. *Helmick*

*v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 135–136, 543 N.E.2d 1212, 1216–1217.

With respect to the company handbook, at oral argument appellant was unable to point to any specific language contained therein which could reasonably be construed as promising continued employment. In his brief in opposition to the motion for summary judgment, appellant directed the trial court's attention to a section of the handbook which provides for progressive discipline, with the ultimate sanction being termination. The handbook also gives specific benefits to any employee with more than a year's service who is discharged without cause. In evaluating those sections of the handbook, we note that the right is reserved to modify or wholly abrogate the handbook. Further, the clause allowing benefits for a discharge without cause is inconsistent with a reasonable belief that the manual was intended to create a right whereby an employee may only be discharged for just cause.

Thus, when we construe the statements and the employee handbook upon which appellant relies most favorably to him, we cannot reasonably conclude that appellant has established the existence of an express or implied employment contract. Accordingly, appellant's Assignments of Error Nos. I, II and IV are not well taken.

## II

With respect to his third assignment of error, appellant relies on *Greeley v. Miami Valley Maintenance Contractors, Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, in support of the proposition that there is an exception to the employment-at-will doctrine when an employee's discharge is in violation of public policy. Appellant maintains that R.C. Chapter 4112 articulates a public policy prohibiting "handicap" discrimination. Appellant argues that he is "handicapped" and, therefore, his termination must be for just cause.

Appellee responds that *Greeley* does not apply because (1) R.C. Chapter 4112 provides the exclusive remedy for employment discrimination cases; (2) to predicate a civil action for employment discrimination on R.C. 4112.99 is an unconstitutional retroactive application of the statute; and (3) the language of paragraph two of the *Greeley* syllabus makes its holding prospective only.

Appellee, in support of its argument that R.C. Chapter 4112 provides the exclusive remedy for employment discrimination, cites two federal cases, *Pozzobon v. Parts for Plastics, Inc.* (N.D.Ohio 1991), 770 F.Supp. 376, and *Emser v. Curtis Industries, Inc.* (N.D.Ohio 1991), 774 F.Supp. 1076. Both of these cases hold that where one alleging a violation of R.C. Chapter 4112 has previously filed a complaint with the Ohio Civil Rights Commission, R.C. 4112.08 bars other suits.

Since there is no assertion that appellant has instituted a complaint with the Ohio Civil Rights Commission, these cases are inapplicable in this context.

Also in support of this proposition, appellee extracts a quotation from *Helmick v. Cincinnati Word Processing, supra,* 45 Ohio St.3d at 135, 543 N.E.2d at 1216:

"[W]e agree with *Peterson* [*v. Scott Constr. Co.* (1982), 5 Ohio App.3d 203, 5 OBR 466, 451 N.E.2d 1236] that R.C. Chapter 4112 does provide the exclusive remedy for pure employment discrimination claims."

Appellee neglects to include the statement immediately following this quotation: "However, in [the *Peterson*] case the court made no ruling * * * concerning the rights of an employee with discrimination claims to also pursue common-law claims." *Id.* Appellee also neglects to mention the syllabus rule of *Helmick* which provides that:

"Allowing a plaintiff to pursue common-law remedies in lieu of the relief provided under R.C. Chapter 4112 creates no conflict and serves to supplement the limited protection and coverage of that chapter." *Id.* at paragraph two of the syllabus.

Appellee's argument concerning the retroactive application of the statute is based on the fact that in 1987 the penalty portion of the statute, R.C. 4112.99, was amended, deleting a criminal misdemeanor penalty and substituting as a remedy "a civil action for damages, injunctive relief, or any other appropriate relief." Since the amendment to R.C. 4112.99 was not enacted until 1987, appellee maintains that application of this section to behavior which occurred prior to the amendment is not constitutionally permissible. See Section 28, Article II, Ohio Constitution.

However, this would be true only if the source of appellant's claim were purely statutory. Appellant's complaint is also founded on common law, based on the Ohio Supreme Court's 1990 *Greeley* decision.

The syllabus of *Greeley* provides:

"1. Public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute. (R.C. 3113.213[D], construed and applied.)

"2. Henceforth, the right of employers to terminate employment at will for 'any cause' no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy. (*Fawcett v. G.C. Murphy & Co.* [1976], 46 Ohio St.2d 245, 75 O.O.2d 291, 348 N.E.2d 144, modified.)

"3. In Ohio, a cause of action for wrongful discharge in violation of public policy may be brought in tort."

Notwithstanding appellee's attempt to use the second paragraph of the *Greeley* syllabus to argue that the rule be applied prospectively only, it is clear from a reading of the *Greeley* syllabus as a whole that the court did not intend to negate the general Ohio principle that a decision of the Ohio Supreme Court which overrules a former decision is retrospective. *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E.2d 467, 468, appeal dismissed (1956) 352 U.S. 804, 77 S.Ct. 30, 1 L.Ed.2d 38. See, also, Annotation (1966), 10 A.L.R.3d 1371, 1382–1383.

It is an unlawful discriminatory practice for an employer to discharge an employee without just cause because of a handicap. R.C. 4112.02(A). This statement of public policy has been effective since July 1976. Am.Sub.S.B. No. 162, 136 Ohio Laws, Part I, 424, 432, effective 7–23–76. Since appellant alleges that he was discharged for a reason prohibited by statute, public policy warrants an exception to the employment-at-will doctrine and appellant may bring a cause of action for wrongful discharge. Accord *Shaffer v. Frontrunner, Inc.* (1990), 57 Ohio App.3d 18, 19–20, 566 N.E.2d 193, 195. Therefore, the trial court erred when it found appellee was entitled to judgment as a matter of law. Accordingly, appellant's third assignment of error is well taken.

On consideration whereof, the court finds substantial justice has not been done the party complaining, and the judgment of the Erie County Court of Common Pleas is reversed. This case is remanded for further proceedings not inconsistent with this decision. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

GLASSER, P.J., and HANDWORK, J., concur.