**STEPHENSON, Appellant,**

**v.**

**LITTON SYSTEMS, INC., Appellee.**

[Cite as *Stephenson v. Litton Sys., Inc.* (1994), 97 Ohio App.3d 125.]

Court of Appeals of Ohio,
Montgomery County.

No. 14585.

Decided Oct. 28, 1994.

*Elaine S. Bernstein,* for appellant.

*Robert J. Brown* and *Theresa D. Jones,* for appellee.

FAIN, Judge.

Plaintiff-appellant Carletta Stephenson appeals from a summary judgment rendered in favor of defendant-appellee Litton Systems, Inc. Stephenson contends that the trial court erred when it decided, as a matter of law, that there can be no public policy exception to the employment-at-will doctrine absent statutory authority. Specifically, Stephenson contends that the public policy of this state in favor of keeping drunk drivers off the road is sufficiently clear, and sufficiently important, that an employee who claims to have been fired because she had reported to the police that her boss was about to get behind the wheel of a car while drunk should have a cause of action for wrongful discharge.

The trial court and Litton Systems relied upon *Tulloh v. Goodyear Atomic Corp.* (1992), 62 Ohio St.3d 541, 584 N.E.2d 729, in which it was held that there can be no public policy exception to the employment-at-will doctrine, absent statutory authority. That case has been recently overruled. *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus. We conclude that taking as true the facts averred by Stephenson, there is a sufficiently clear and compelling public policy interest—the state's interest in

abating drunk driving—to constitute an exception the the employment-at-will doctrine. Accordingly, the summary judgment rendered in favor of Litton Systems is reversed, and this cause is remanded for further proceedings consistent with this opinion.

I

The facts averred by the parties in this case are in dispute. Because the issues were joined in Litton Systems' motion for summary judgment, the trial court properly took as true Stephenson's averments. Although Litton Systems denies many of Stephenson's averments, it recognizes that for present purposes they must be deemed true.

Stephenson avers that one evening she had good reason to believe that King, her superior, had been drinking excessively, and was about to leave a restaurant and drive his car while under the influence of alcohol. Although Stephenson did not actually see King drinking to excess, he had been in the restaurant for a long time, a glass of wine was in front of him on the table, and, more important, Stephenson had observed King return from lunch too intoxicated to perform his managerial functions an average of once a week for a period of from one to two years before this incident. She had also heard from at least one fellow employee that King had driven while apparently under the influence on one occasion while the employee was a passenger, leaving the berm of the road on several occasions.

Stephenson called a well-publicized police drunk driving hotline, 1–800–GRAB DUI, and reported her suspicions. Stephenson avers that she believed that her identity as the informant would be kept anonymous.

Police arrived at the restaurant and contacted the manager. The manager introduced the police officers to the waitress who was serving King's table. The waitress assured the police officers that King had not been drinking excessively, and was not under the influence of alcohol, whereupon the police officers left. The waitress then informed King of the police inquiry.

Within a few days, King had obtained a copy of a tape recording of Stephenson's telephone call to the police, pursuant to the Ohio Public Records Act. Although Stephenson was not identified in the tape recording, King recognized her voice. When confronted, Stephenson, believing herself to be entitled to anonymity, denied making the call. Other employees, however, recognized her voice on the tape recording and confirmed her identity.

Stephenson was discharged from her employment. She avers that she was discharged because she reported to the police the likelihood that King, whom she reasonably believed to have been in the habit of driving his car while under the influence of alcohol, was about to do so again.

Stephenson brought this action for wrongful discharge and for defamation. Her defamation claim was based on statements made to prospective employers concerning her qualifications and the reason for her termination by Litton Systems. Litton Systems moved for summary judgment. The trial court granted the motion for summary judgment, rendering judgment as to both of Stephenson's claims. Stephenson does not assign as error the rendering of summary judgment with respect to her defamation claim, and that is not involved in this appeal.

In rendering summary judgment on the wrongful discharge claim, the trial court reasoned as follows:

"There is no doubt that the public policy of the State of Ohio supports the proposition that drunk drivers must be kept off our roads and highways. It is in the public interest to encourage concerned citizens to prevent drunk driving whenever possible. However, no statute of this State makes it a violation to terminate or discipline an employee for calling to report a suspected drunk driver. Thus, although an employee's reporting of a suspected drunk driver should not, of itself, be an acceptable cause for termination, Ohio law does not recognize a cause of action for damages resulting from such termination. See, *Tulloh [v. Goodyear Atomic Corp. (1992) ]* 62 Ohio St.3d 541, [584 N.E.2d 729] at syllabus; *Edelman [v. Franklin Iron & Metal Corp.]* (1993), 87 Ohio App.3d [406] at 410 [622 N.E.2d 411 at 414]. The Court is obligated to follow this law. The Court, therefore, finds that considering the facts in the light most favorable to the plaintiff herein, no genuine issue of material fact exists and the defendant is entitled to judgment as a matter of law on the wrongful discharge claim."

From the summary judgment rendered against her on her wrongful discharge claim, Stephenson appeals.

## II

Stephenson's sole assignment of error is as follows:

"There are genuine issues of material fact concerning whether or not appellant was terminated in violation of Ohio public policy."

The trial court held, based on *Tulloh v. Goodyear Atomic Corp., supra,* and *Edelman v. Franklin Iron & Metal Corp.* (1993), 87 Ohio App.3d 406, 622 N.E.2d 411, a decision of this court following *Tulloh,* that there can be no public policy exception to the employment-at-will doctrine without statutory authority.

■ *Tulloh* has been expressly overruled in *Painter v. Graley, supra,* a recent decision of the Ohio Supreme Court. In that case it was held that a public policy exception to the employment-at-will doctrine is not limited to instances in which it has been expressly authorized by statute, but may find support in legislation

generally, as well as other sources, including common law. *Id.,* 70 Ohio St.3d at 384, 639 N.E.2d at 56–57. In *Painter,* it was held that public policy exceptions to the employment-at-will doctrine must be clear, and should only sparingly be recognized by courts. We understand and share the Supreme Court's concern that a conclave of judges should not be allowed to pull "public policy" out of thin air to make the law conform to their individual conceptions of what the law ought to be. A public policy ought to be objectively discernable from sources outside the judge's individual social or legal philosophy before being permitted to override the settled doctrine of employment at will.

The public policy of this state in favor of keeping drunk drivers off of the streets appears to be both strong and clear. It is not a matter of a conclave of judges announcing to the world a "public policy" invented by them for the purpose of subjecting the citizens of this state to a rule of law that has little or no support outside the minds of the judges. Recent, sweeping enactments by the General Assembly designed to discourage drunk driving are an objective manifestation of the public policy of this state in favor of taking all reasonable steps to eliminate drunk driving.

The police drunk driving hotline, 1–800–GRAB DUI, has been well publicized. It is consistent with reasonable efforts to get drunk drivers off the roads of our state, and manifests an intent to rely upon citizen informants to assist the police in detecting drunk driving.

We hold that the public policy in favor of removing drunk drivers from the roads of our state is sufficiently clear, and sufficiently compelling, to override the doctrine of employment-at-will when an employee is discharged because, having a reasonable basis for her suspicions, she has informed the police of the likelihood that her superior at work is going to be driving while intoxicated.

Given our holding, there are genuine issues of material fact in this case precluding summary judgment. Litton Systems has controverted many of the facts upon which Stephenson's claim is predicated, including her averment as to the reason why she was discharged. At oral argument, Litton Systems contended that Stephenson had an insufficient basis for suspecting that King was under the influence, and that Stephenson had failed to rebut Litton Systems' averment that she was fired because of her dishonest refusal to acknowledge her voice as the police informant, rather than because she had informed on King.

We conclude that whether Stephenson had a reasonable basis for her suspicions is, on this record, a jury question. We further conclude that the evidence in the record, including the fact that King obtained a copy of the tape recording of the anonymous informant's call to the police and the fact, as averred by Stephenson, that she was told that King's drinking habits were none of her

concern, would permit a reasonable jury to infer that it was her phone call to the police, not her unwillingness to acknowledge that call, that resulted in her discharge.

Stephenson's sole assignment of error is sustained.

## III

Stephenson's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BROGAN and WOLFF, JJ., concur.